**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| First Kuwaiti General Trading & Contracting W.L.L., | ) ) ) ) |
| *Movant,* | ) ) ) |
| v. | ) ) ) |
| Kellogg Brown & Root International, Inc., | ) ) ) |
| *Respondent.* | ) ) ) |

Case No. 1:23-mc-1

## MEMORANDUM OPINION AND ORDER

Petitioner First Kuwaiti General Trading & Contracting W.L.L.s (hereinafter "FKTC"), has filed a Motion to Vacate an Arbitration Award, [Doc. No. 1], and Respondent Kellogg Brown & Root (hereinafter "KBR") has filed a Motion to Confirm the same Arbitration Award, [Doc. No. 20]. The Motions have been fully briefed by the Parties and oral argument was held on March 22, 2023, following which the Court took the Motions under advisement. Upon considerations of the arguments, the memoranda submitted in support thereof and in opposition thereto, and for the reasons outlined below, FKTC's Motion to Vacate the Arbitral Award is DENIED and KBR's Motion to Confirm the Arbitration Award is GRANTED.

### Background

The underlying dispute between the Parties issues out of several contracts for logistics work during the invasion of Iraq in 2003, as to which there have been a series of administrative appeals, judicial proceedings, and alternative dispute resolutions. Currently pending before the

1

Court is FKTC's motion to vacate a July 26, 2022 Final Award on claims submitted for arbitration rendered by the International Centre for Dispute Resolution (hereinafter "ICDR"), filed on January 5, 2023, together with KBR's cross-motion to confirm that arbitral award, filed on February 2, 2023.

As presented in the factual findings of the ICDR and the Parties' submissions, the following underlying facts are not disputed by the Parties unless indicated otherwise:

In 2001, the United States Army awarded KBR a logistics contract to provide material support to American troops for the war efforts in Iraq and Kuwait after the terrorist attacks of September 11, 2001. [Doc. No. 1-3] at 7 ¶ 10. In 2003, KBR entered into several subcontracts with FKTC, including what the ICDR refers to as Subcontract 11 (to provide trailers for troop housing), Subcontract 167 (to lease tractors and refrigerated trailers), and Subcontract 190 (to provide tractor heads to pull fuel tank trailers). *Id*. at 8 ¶ 11. FKTC's case for vacating the final award rests primarily on the disputes that arose regarding Subcontract 11.

In 2003, pursuant to the terms of Subcontract 11, FKTC was hired to provide trailers for United States troops to use as living quarters in Iraq. [Doc. No. 1-1] at 5. FKTC experienced increased costs while performing the subcontract; and as memorialized in two change orders ("the Change Orders") that modified Subcontract 11, KBR agreed to provide reimbursement for these increased costs in the amount of roughly 48 million dollars. *Id*. at 5, 11; *see also* [Doc. No. 1-9]; [Doc. No. 1-10].

There were several disputes pertaining to the performance of Subcontract 11 and various other subcontracts, and these disagreements were subject to different dispute resolution processes. [Doc. No. 1-3] at 8 ¶ 12. Between 2008 and 2013, as a result of the various dispute

resolution decisions and several stipulations between the Parties, FKTC was owed more than 45 million dollars in compensation with respect to several of the subcontracts. *Id*. at 13-14 ¶¶ 31-32. However, outstanding claims remained and on January 19, 2009, the Parties entered into an arbitration agreement ("the Arbitration Agreement") to resolve all remaining claims and disputes. *Id*. at 9.

During the pendency of these outstanding, unresolved claims and disputes, a former KBR contract administrator, Anthony Martin, plead guilty to his role in an illegal kickback scheme and implicated FKTC and another subcontractor in that scheme. *Id*. at 8 ¶ 13. In 2014, FKTC informed the ICDR tribunal that it had received no payments from KBR because KBR has represented that KBR had lodged "contingent claims" against FKTC in connection with a U.S. Government False Claims Act case against both KBR and FKTC, a criminal case in which the Government alleged connections between the two companies and Mr. Martin's kickback scheme. *Id*. at 14. FKTC denies any connection to the kickback scheme.

As a result of Martin's guilty plea and illegal kickback scheme, the U.S. Government refused to reimburse KBR for the approximately $48 million agreed to in the Change Orders executed with FKTC. [Doc. No. 1-1] at 12-13 ¶¶ 28-30; *see also* [Doc. No. 1-3] at 74 ("A new decision by the DMCA contracting officer quickly followed the entry of Mr. Martin's plea agreement.") KBR appealed that refusal to the Armed Services Board of Contract Appeals, purportedly without informing FKTC about the appeal or consulting with it on the appeal. *Id*. at 13. On November 19, 2018, the Armed Services Board affirmed the denial of the Change Orders payments. *Id*. at 14 ¶ 38. Then on September 1, 2020, the Federal Circuit affirmed the Armed

Services Board ruling. *Kellogg Brown & Root Servs., Inc. v. Sec'y of the Army*, 973 F.3d 1366 (Fed. Cir. 2020).

On July 26, 2022, the ICDR issued a "FINAL AWARD" in favor of KBR, denying FKTC's claim for the unpaid Change Orders, on the grounds that the Federal Circuit's decision denying KBR's claims for the costs of the Change Orders on Subcontract 11 was dispositive. [Doc. No. 1-3] at 89 (alternatively "the Arbitration Award" or "the July award")). The ICDR tribunal further found that KBR was entitled to withhold payments due to FKTC under other subcontracts on account of an "underlying equitable adjustment." *Id*.

Under Article 30 of the ICDR International Arbitration Rules, "[w]ithin 30 days after the receipt of an award, any party, with notice to the other parties, may request the tribunal to interpret the award or correct any clerical, typographical or computation errors or make an additional award as to claims presented but omitted from the award." [Doc. No. 27-2] at 21. On August 24 and 25 of 2022, KBR and FKTC both made applications to the ICDR pursuant to Article 30. [Doc. No. 1-4] at 1. By decision dated October 13, 2022, issued and delivered to the Parties on October 20, 2022, the ICDR tribunal dismissed FKTC's application as beyond the scope of Article 30 review, *see* [Doc. No. 1-4] at 19 ¶ 38, granted KBR's application to state the net amount awarded to FKTC under Subcontract 11, after applying "straightforward math" (without objection from FKTC) to subtract one already determined number from another already determined number, [Doc. No. 1-4] at 22, ¶ 46, and dismissing KBR's application as beyond the scope of Article 30 with respect to its request for a calculation of "offsets." [Doc. No. 1-4] at 22-23 ¶¶ 48-49. On January 5, 2023, FKTC filed its Motion to Vacate[1] [Doc. No 1-1] and on

---

[1] FKTC asserts, and KBR does not challenge, that the Court possesses subject-matter jurisdiction under 28 U.S.C. §1332(a)(2) because FKTC is a "citizen of two foreign states" and KBR is headquartered in Texas and incorporated

February 2, 2023, KBR filed its opposition to FKTC's Motion to Vacate and its motion to confirm the arbitration award. [Doc. No. 21].

**Legal Framework**

There is a "limited scope of review that courts are permitted to exercise over arbitral decisions." *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994). In that regard, "a district or appellate court is limited to determining whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably but simply whether they did it." *Id.* (internal quotations and citations omitted). Accordingly, the Federal Arbitration Act permits the vacatur of an arbitration award only:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 USC § 10(a).

In addition, when an arbitration panel displays "manifest disregard" for the applicable law, a ground for vacatur exists. *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 483 (4th Cir. 2012). Manifest disregard occurs when "(1) the applicable legal principle is clearly defined and

---

in Delaware. [Doc. No. 1-1] at 8 ¶ 12. Similarly, the Parties do not dispute that venue is proper in this Court as the award was rendered in Arlington, Virginia. *Id.* at 8 ¶ 13.

not subject to reasonable debate; and (2) the arbitrator refused to heed that legal principle." *Id*. (holding that recent Supreme Court precedent was compatible with this Circuit's earlier tests for manifest disregard) (quoting *Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008)). If a petitioner wishes to vacate an arbitral award, that petitioner must serve the notice of the motion to vacate the award on the adverse party within three months from the date when "the award is filed or delivered." 9 USC § 12. A party seeking to confirm an award must do so within one year of when the award is made and a district court "must grant such an order" confirming the award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the Federal Arbitration Act. 9 USC § 9.

### Discussion

FKTC argues that the ICDR tribunal showed a manifest disregard for the applicable law and the Arbitration Award should be vacated. [Doc. No. 1-1] at 23. In response, KBR argues that FKTC has not filed its Motion to Vacate within three months of the Arbitration Award and therefore the Motion to Vacate is untimely. It further contends that if the Motion to Vacate is deemed timely, it must be denied on its merits, as there is no basis upon which to find that the ICDR Tribunal acted improperly. [Doc. No. 21] at 20. KBR further contends that if the Motion to Vacate is denied as untimely or on the merits, the Court must grant its Motion to Confirm the Award. *Id*. at 34. For the reasons stated below, the Motion to Vacate the Arbitration Award is untimely and therefore must be dismissed; and for this reason, the Court does not reach the merits of FKTC's claims. Given the Court's disposition on FKTC's Motion to Vacate, the Federal Arbitration Act mandates confirmation of the Arbitration Award.

*1. FKTC has not timely filed its Motion to Vacate.*

On July 26, 2022, the ICDR tribunal issued and delivered to the parties an 86-page decision, titled "FINAL AWARD," dated July 11, 2022. [Doc. No. 1-3]. On October 20, 2022, the tribunal issued and delivered a decision on the Article 30[2] motions filed on August 24 and 25, 2022; and FKTC argues that for the purposes of 9 U.S.C. §12, the three month time period within which to file its Motion to Vacate did not begin to run until the Tribunal issued and delivered its decision on the Article 30 motions on October 20, 2022. [Doc. No. 27] at 8.

Section 12 of the Federal Arbitration Act states that "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. §12. The Parties do not dispute that the Motion to Vacate the Arbitration Award was filed more than three months after July 26, 2022. Therefore, the issue is on what date the arbitration "award" was "filed or delivered" for the purposes of the three-month period applicable to the filing of FKTC Motion to Vacate.

FKTC argues that its Motion to Vacate the Arbitration Award must be considered timely under the "complete arbitration rule," whose purpose, it contends, is comparable to those formal court rules, such as Fed. R. App. P. 4(a)(4)(A)(iv), intended to resolve all issues before post-judgment motions are decided. [Doc. No. 27] at 8-10. The complete arbitration rule has been recognized within the context of certain arbitrations and under certain circumstances. For example, in *Peabody Holding Co., LLC v. UMW*, 815 F.3d 154 (4th Cir. 2016), the Fourth Circuit found the rule applicable within the context of arbitrations carried out under Section 301

---

[2] Article 30 of the ICDR rules provides that,

    1. Within 30 days after the receipt of an award, any party, with notice to the other parties, may request the tribunal to interpret the award or correct any clerical, typographical or computation errors or make an additional award as to claims presented but omitted from the award.

    2. If the tribunal considers such a request justified, after considering the contentions of the parties, it shall comply with such a request within 30 days after the request.

[Doc. No. 27-2] at 2.

of the Labor Management Relations Act.[3] Other courts have found that judicial review of an arbitration award was inappropriate when the arbitrator had not yet rendered a decision on damages. *See Millmen's Local 550, United Brotherhood of Carpenters & Joiners v. Well's Exterior Trim*, 828 F.2d 1373, 1376 (9th Cir. 1987) ("an arbitration award that postpones the determination of a remedy should not constitute a 'final and binding award' reviewable under 301."); *Wooten v. Fisher Invs.*, 688 F.3d 487, 491 (8th Cir. 2012) (finding the complete arbitration rule prevented review when the arbitrator had only "decided the substantive rights of the parties during arbitration."); *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980) ("for a claim to be completely determined, the arbitrators must have decided not only the issue of liability of a party on the claim, but also the issue of damages.")[4]

Unlike the cases that have found applicable the complete arbitration rule, the Arbitration Award was clearly and expressly intended to be a final award as to all outstanding claims before it, including liability and damages, and in fact decided all such issues. *See* [Doc. No. 1-3] at 6

---

[3] The Fourth Circuit concluded:

> Before a court may review the award, however, it must determine that the award is 'final and binding.' In line with this directive, many courts have held that a federal district court should not review a labor arbitrator's decision under Section 301 until the arbitrator has ruled on both liability and remedies--a procedural requirement commonly referred to as the complete arbitration rule.
>
> ***
>
> As noted, the complete arbitration rule provides that a federal court asked to review an arbitrator's decision should refrain from doing so until the arbitrator has decided all facets of the dispute.

*Peabody Holding Co.*, 815 F.3d at 159-160 (internal citation omitted) (citing *Gen. Drivers Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963)).

[4] FKTC also argues that "[o]ther courts similarly calculate the three-month deadline from the revised award, not the original one." [Doc. No. 27] at 9-10. However, those courts either did not calculate the three-month period as FKTC proposes or had facts highly distinguishable from the facts of this case. *See Greenhouse Holdings, LLC v. Int'l Union*, 43 F.4th 628, 631 (6th Cir. 2022) (calculating three months from the date of a "supplemental award" because "[t]he arbitrator didn't determine the amount of damages until it issued a supplemental award"); *Seneca Nation of Indians v. New York*, 420 F. Supp. 3d 89, 99 (W.D.N.Y. 2019) (holding a motion to vacate must be made three months from when an award was "intended by the arbitrators to resolve all claims submitted to them."); *Craddock v. LeClair Ryan*, 2019 U.S. Dist. LEXIS 98209 at *4-6 (E.D. Va. June 11, 2019) (the district court considered a revised final award that was issued *after* the parties had filed motions in the federal district court and the court made no findings on the three month period to file such a motion to vacate); *Counsel Corp. v. Wasserson*, 2010 U.S. Dist. LEXIS 32170 at *15-21 (E.D. Pa. March 31, 2010) (making no findings on the three month period, and noting the motion to vacate was filed one month after the final award and twenty days after the corrected final award).

("In accordance with the agreement of the Parties, the Tribunal now decides the matters that remain in this long-running arbitration of many consolidated claims and counterclaims.") Titled "FINAL AWARD," it referenced the Parties' agreement that "each dispute arising out of or relating to the Subcontracts, shall be resolved by final and binding arbitration..." *Id*. at 9. Subsequently, in its decision on the Article 30 motions for clarification, the tribunal noted that "[t]he claims decided in the Final Award were the last in a long sequence of claims submitted to arbitration pursuant to the Parties' 2009 Arbitration Agreement." [Doc. No. 1-4] at 3. The Tribunal further stated that "[a]ll the claims have been decided pursuant to the 2009 Arbitration Agreement." *Id*. at 3. Within the context of dismissing FKTC's Article 30 motion, the tribunal also explained how FKTC's Article 30 application requested relief from the Final Award beyond the limited scope of Article 30:

> FKTC's post-award Application is manifestly not such a request for interpretation consistent with Article 30 of the ICDR Rules. It is, by its express articulation, a demand for reconsideration of the Tribunal's decision. That is a far cry from an application for the correction of a clerical, typographical or computation error contemplated by the plain terms of Article 30(1) of the ICDR Rules. No tribunal empaneled under the ICDR Rules has jurisdiction to entertain an application of this nature following issuance of a final award.

*Id*. at 10. The issue then reduces to whether the Arbitration Award, despite its title and the Tribunal's intention, was so unclear or incomplete that for the purposes of 9 U.S.C. §12 further action by the Tribunal was necessary in order for it to constitute "an award that was filed or delivered."

The District Court of Maryland considered a similar issue in *Parsons, Brinkerhoff, Quade & Douglas, Inc. v. Palmetto Bridge Constructors*. 647 F. Supp. 2d 587 (D. Md. 2009) (hereinafter "*Parsons*"). Much like the present case, the arbitrators in *Parsons* termed their

decision a "Final Award" and the district court considered whether the arbitrators intended to resolve all claims before them based on the language of the arbitrators' final decision. *Id*. at 593 (citing *Fradella v. Petricca*, 183 F.3d 17 (1st Cir. 1999)). The *Parsons* district court also found that a motion for a modification of the award was a "subsidiary matter" as the arbitration panel found, as did the ICDR tribunal in deciding the Article 30 motions, that it could not have amended any substantive portion of the final award. *Id*. at 593. Based on these factors, the *Parsons* district court found that the issuance of the "Final Award"—not the date of the order in response to the motion to modify the award—triggered the three-month window to file a motion to vacate. *Id*. at 593-594.

As in *Parsons,* the Court finds and concludes that for the purposes of 9 U.S.C. §12 the three month period within which to file FKTC's Motion to Vacate began to run on July 26, 2022 and its filing of its Motion to Vacate on January 5, 2023 was untimely. In sum, as reflected above, the parties agreed to submit to arbitration all remaining claims, the ICDR tribunal, in fact, decided in its Arbitration Award, as it and the parties intended, all remaining claims that had been submitted to it for resolution; the Article 30 motions did not authorize reconsideration or an expansion of those claims submitted; and the tribunal's decision on the Article 30 motion did not substantively change any aspect of the Final Award. Rather, the Article 30 motion resulted only in, and entailed no more than, a "straightforward math" computation based on already determined amounts.[5]

---

[5] FKTC has also argued that because the Federal Arbitration Act was modeled on the New York Arbitration statute, the Court should follow New York state decisions that permit certain exceptions to the time limitations on filing a motion to vacate. [Doc. No. 27] at 9. The Second Circuit has thoroughly rejected that argument. *See Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) (finding common law exceptions in New York state courts had a legislative basis, but such exceptions should not apply to the Federal Arbitration Act). The Fourth Circuit has explicitly adopted the Second Circuit's reasoning in *Florasynth. See Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986) ("The existence of any such exceptions to §12 is questionable, for they are not implicit in the language of the

*2. The Court must confirm the Arbitration Award for KBR.*

KBR has moved the Court to confirm the award of the ICDR tribunal pursuant to 9 U.S.C. § 9.[6] FKTC opposes that request on the grounds that this Court lacks the jurisdiction and authority to confirm the award because the Parties did not explicitly agree that a court could enforce the award (i.e. the agreement does not contain language that explicitly references judicial enforcement). [Doc. No. 27] at 23.

The Federal Arbitration Act states that unless an arbitration award is vacated, modified, or corrected, a court "must grant" an application for judicial enforcement "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration…."  9 U.S.C. § 9.[7] *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) ("There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies.")[8] In order to determine whether the parties have agreed to judicial enforcement, the Court must look at the arbitration agreement between FKTC and KBR. *See id.* ("The starting

---

statute, and cannot be described as common-law exceptions because there was no common-law analogue to enforcement of an arbitration award.") For the reasons stated by the Second and Fourth Circuits, this Court likewise rejects FKTC's contention within the context of this case.

[6] In its reply in support of the counterclaim, KBR raised for the first time that enforcement of the award is also authorized under Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §207, since FKTC is a foreign national. [Doc. No. 28] at 11-12. FKTC has not been given an opportunity to address this argument in a written submission; but in any event, and without expressly ruling on the merits of that claim, the Court sees no conflict between the confirmation provisions of Chapter 1 and Chapter 2 that would affect the Court's ruling as to enforcement.

[7] The FAA also provides that there may be judicial enforcement if the parties " specify the court" and if no specific court is indicated in the agreement to arbitrate, the application for confirmation of an award should be made "in the district within which such an award was made." 9 U.S.C. §9. Although the parties' Arbitration Agreement does not specify a court for enforcement, enforcement by this Court is authorized under 9 U.S.C. §9 since the Arbitration Award was made in Arlington, Virginia, which is within the Eastern District of Virginia. *See* [Doc. No. 1-3] at 90.

[8] A threshold issue is whether the parties have agreed that the decision of an arbitrator is "final."  *See Rainwater v. National Homes Ins. Co.*, 944 F.2d 190, 192 (4th Cir. 1991) (per curiam) (citing *I/S Stavborg (O.H. Meling, Manager) v. National Metal Fasteners, Inc.*, 500 F.2d 424 (2d Cir. 1974)) ("a court has jurisdiction to confirm an award only if the parties have agreed that the award is final.") FKTC does not appear to contend that the award is not sufficiently "final" for judicial enforcement, only that the language used in the Arbitration Agreement does not reflect an agreement for judicial enforcement.

point of course is the agreement itself, since an agreement to arbitrate is a contract and must be interpreted like any other contract.") (citing *Saturn Distribution Corp. v. Williams*, 905 F.2d 719 (4th Cir. 1990)).

The Arbitration Agreement between the Parties contains the following language,

1. **Agreement to Arbitrate**
    1.1 Parties hereby agree that each dispute arising out of or in relation to the Subcontracts (hereinafter collectively, the "Disputes"), shall be resolved by final and binding arbitration administered by the American Arbitration Association International Centre for Dispute Resolution, in accordance with the ICDR Arbitration Rules, except as modified herein.

[Doc. No. 1-21] at 3. FKTC contends that non-withstanding the use of the phrase "final and binding," the award may not be enforced in this Court since neither the arbitration agreement nor the applicable ICDR rule references "judicial enforcement." This contention fails for a number of reasons.

In the Arbitration Agreement, the parties clearly and explicitly agreed that a resolution through arbitration as to all Subcontract disputes was "final and binding"; and the arbitration award, which resolved all outstanding disputes, was a "final" award. Courts, including the Fourth Circuit, have recognized that an intent to have an award judicially enforceable can be inferred from references to the finality of an arbitration award. *Qorvis Communs., LLC v. Wilson*, 549 F.3d 303, 308 (4th Cir. 2008) ("courts must undertake enforcement of arbitration awards so long as the parties *contemplated* judicial enforcement.") (internal quotation marks omitted and emphasis in original) (citing *Hall Street Assocs.*, 552 U.S. at 587 n.6); *id.* at 310 ("The word 'binding' means that the parties are bound by the arbitration award and are not free to relitigate their claims *de novo* in court.") Courts have also found that "the threshold is very low for finding an arbitration agreement to be binding." *Bowers v. N. Two Cayes Co.*, 2017 U.S. Dist. LEXIS

158773 at *12 (W.D.N.C. September 27, 2017) (finding that the use of the word 'prevailing' to describe the party entitled to an award manifested an intent for an award to be enforceable.); *see also McNeil v. Haley South, Inc.*, 2010 U.S. Dist. LEXIS 95658 at *24 (E.D. Va. September 13, 2010) (holding the use of the word arbitration over the word mediation in an agreement manifested the intent to make an award judicially enforceable). That the parties contemplated judicial enforcement is further reflected in FKTC's application to the Court to vacate the award. *See Qoorvis Communs.*, 549 F.3d at 311 ("Whatever doubt remains as to the intent of the parties from the language of the arbitration clause, that doubt is removed by the conduct of the parties to this case in that they moved in federal district court under the FAA to vacate or modify the award." (internal quotation marks omitted) (quoting *Stavborg*, 500 F.2d at 427)).[9] For all the above reasons, the  Court concludes that the arbitration award was a final award and that the parties sufficiently evidenced their intent and agreement to have that final award judicially enforced.

---

[9] In support of its position, FKTC relies on *PVI, Inc. v. Ratiopharm GmbG, PVI*, 135 F.3d 1252,1254. in which the Eighth Circuit concluded that the underlying arbitration agreement did not sufficiently demonstrate that the Parties agreed to an arbitration, or that the dispute resolution process led to an award; and *Oklahoma City Assoc. v. Wal-Mart Stores, Inc.*,923 F.2d 791, 794 (10th Cir. 1991), in which the Tenth Circuit found a dispute resolution clause was not binding because the clause lacked any language indicating the resolution was "final and binding." The reasoning of *PVI*, has not been followed by either the Fourth Circuit or other courts in this Circuit. *Compare* 135 F.3d 1252, 1254 (8th Cir. 1998), *with Qoorvis Commns.*, 549 F.3d at 311 (collecting cases); *Norfolk S. Ry. Co. v. Zayo Grp. LLC*, 593 F. Supp. 3d 286, 291 n.3 (E.D. Va. 2022) (holding that the inclusion of "final and binding" in an agreement indicated an award would be enforceable); *McNeil*, 2010 U.S. Dist. LEXIS 95658 at *14 ("the failure to specify the applicable body of arbitration procedures to be used does not render the contract unenforceable as patently ambiguous.") And the arbitration agreement in *Oklahoma City Assoc.* is readily distinguishable from that in this case. *See  Oklahoma City Assoc* ("We have found no court, absent explicit consent to have judgment entered and absent both a finality clause and an AAA Rules clause in the contract, that has found consent to have judgment entered by mere participation in an arbitration hearing.")

## Conclusion

For the reasons stated above, the Court finds that FKTC's Motion is untimely and the Federal Arbitration Act mandates confirmation of the award.[10] Accordingly, it is hereby

ORDERED that the Motion to Vacate the Arbitration Award, [Doc. No. 1] be, and the same hereby is, DENIED; it is further

ORDERED that the Motion to Confirm the Arbitration Award, [Doc. No. 20] be, and the same hereby is, GRANTED; and it is further

ORDERED that thirty (30) days from the date of this Order, the parties file a notice that contains the sum certain to be awarded as enforcement of the arbitration award or states how they propose the Court proceeds to make that determination.[11]

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all counsel of record.

Anthony J. Trenga
Senior U.S. District Judge

May 12, 2023
Alexandria, Virginia

---

[10] KBR has also filed with the Court the papers required by the Federal Arbitration Act for confirmation. *See* 9 U.S.C. §13.

[11] At oral argument, the Parties requested that before the Court issues a final Order enforcing the arbitration award they be given the opportunity to meet and confer in order to resolve a matter not presented to the Court, but which might affect the calculation of the total sum to be awarded in this case.