## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| FIRST KUWAITI GENERAL TRADING & CONTRACTING W.L.L., <br><br> *Movant,* <br><br> v. <br><br> KELLOGG BROWN & ROOT INTERNATIONAL, INC., <br><br> *Respondent.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 1:23-mc-1 |

## **MEMORANDUM OPINION AND ORDER**

By Order dated May 12, 2023, the Court denied First Kuwaiti General Trading & Contracting W.L.L.'s ("FKTC") Motion to Vacate an Arbitration Award, [Doc. No. 1], and granted a Motion to Confirm the same Arbitration Award, [Doc. No. 20], filed by Respondent Kellogg Brown & Root Internal, Inc.'s ("KBR"). [Doc. No. 31]. The Court then ordered the parties to confer about a sum certain to be awarded. *Id*. at 14. The parties could not reach an agreement and a status conference was held on August 16, 2023, following which the parties briefed their positions. [Doc. Nos. 40, 41, 45, 46]. As part of its briefing, FKTC moved to confirm five prior partial final arbitration awards from 2010-2012, two joint stipulations from 2009 and 2014, and the final award from 2022 to the extent it rendered enforceable prior partial awards and stipulations. [Doc. No. 42]. In total, FKTC claims that overall it is owed nearly $20 million, while KBR claims instead that to the contrary, it (KBR) is owed more than $16 million. For the following reasons, the Court will grant FKTC's motion to confirm, [Doc. No. 42], deny interest on the

1

stipulations, and award to KBR as enforcement of the arbitration award a total sum of **$8,078,057.96**.

## I. BACKGROUND

The Court previously summarized this litigation in its prior Order, and the underlying facts in this long-running dispute are well-known to the parties. *See* [Doc. No. 31] at 1-4. The Court makes the following findings of fact with respect to arbitration awards, interest accrued, and outstanding balances therein.

### A. Prior Awards and Stipulations

1. The parties entered a joint stipulation in 2009 where KBR agreed to claims by FKTC amounting to $26,255,713. [Doc. No. 41-4]. The stipulation could "not be revoked by any party and is conclusive in this arbitration." *Id.*

2. In June 2010, the arbitration tribunal entered a partial final award to FKTC on Subcontract 506 for $5,827,827.25 plus interest. [Doc. No. 41-5] at 58. In August 2012, the tribunal ordered that KBR pay 5 percent simple pre-award interest on this award, running from 180 days after each of the invoices underlying the claims, and 5 percent compound post-award interest. [Doc. No. 41-9] at ¶ 27.

3. In November 2011, the tribunal entered a subsequent partial final award to FKTC with respect to Subcontract 506 to resolve certain damages issues and awarded an additional $8,784,902.55 plus interest. [Doc. No. 41-8] at 40. In August 2012, the tribunal ordered that on this award KBR pay 5 percent simple pre-award interest from April 25, 2008 and 5 percent compound post-award interest. [Doc. No. 41-9] at ¶ 29 & p.15.

4. In August 2010, the tribunal entered a partial final award to FKTC on Subcontract 22 for $167,937.81 plus interest. [Doc. No. 41-6] at 48. In August 2012, the tribunal ordered that on this award KBR pay 5 percent simple pre-award interest from May 7, 2007 and 5 percent compound post-award interest. [Doc. No. 41-9] at ¶ 32.

5. In August 2010, the tribunal entered a partial final award denying all claims and counterclaims associated with Subcontract 145. [Doc. No. 41-6] at 48.

6. In January 2011, the tribunal entered a partial final award to FKTC on Subcontract 417 for $999,772 following KBR's concession. [Doc. No. 41-7] at 20. Further, the Court reads the partial final award on Subcontract 417 and partial final award on interest as providing

for 5 percent pre-judgment simple interest to run from April 6, 2006, and 5 percent post-judgment compound interest.[1]

7. A joint stipulation was entered in 2014, whereby KBR agreed to claims by FKTC amounting to $3,282,114. [Doc. No. 41-10]. The stipulation could "not be revoked by any party and is conclusive in this arbitration." *Id.* Moreover, it specifically noted that prior stipulations and agreements remained in effect and were not amended by that stipulation. *Id.*

8. In 2014, KBR made partial payments owed on Subcontract 506 ($17,008,777), Subcontract 22 ($195,866), and Subcontract 417 ($999,772). [Doc. No. 41-12]. The total amount paid equaled $18,204,415. According to FKTC, those payments represented the principal and pre-award interest owed, but not any post-award interest. [Doc. No. 41] at 6 ("KBR paid the principal and pre-award interest on [the awards for Subconstructs 506, 22, and 417] in 2014.").

9. The tribunal's July 2022 final award referenced its prior awards on Subcontracts 506, 22, and 417, and stated that no damages were awarded as to Subcontract 145. [Doc. No. 41-2] at ¶¶ 25-28.

10. The tribunal's July 2022 final award awarded KBR on Subcontract 11 a total of $48,754,547 as payments it could claw back from FKTC. [Doc. No. 41-2] at ¶¶ 173-84.

11. The tribunal's July 2022 final award awarded FKTC 1,063,700 Kuwaiti dinars plus interest on Subcontract 190, [Doc. No. 41-2] at ¶¶ 115-40, [Doc. No. 41-13] at ¶ 42, which the parties agree should be converted to $6,604,074.38 plus 5 percent interest. [Doc. No. 41] at 6. The tribunal ordered that, "in accordance with the Partial Final Award on Interest

---

[1] In the Subcontract 417 partial final award, the tribunal ordered "simple interest in an amount to be determined in accordance with the provisions of Procedural Order No. 10 dated August 25, 2010 for FKTC claim 1." Unclear is whether the interest was pre-judgment, post-judgment, or both, and whether simple interest applied to only one of those categories, or both. Procedural Order No. 10 outlined that the tribunal anticipated the rates of interest for Subcontract 506 to be consistently applied to each discrete claim. [Doc. No. 41-9] at ¶ 30. The rates applied to Subcontract 506 were 5 percent pre-judgment *simple* interest and 5 percent post-judgment *compound* interest. Therefore, the explicit instruction in the Subcontract 417 partial award that interest be "simple" is arguably inconsistent with what was applied to post-judgment interest on Subcontract 506. But the more logical reading is for the simple interest referred to in the partial final award to refer to the pre-judgment interest, consistent with Subcontract 506, and to defer to Procedural Order No. 10 (*i.e.*, Subcontract 506) for the calculation of post-judgment interest. Moreover, awarding post-judgment *compound* interest is consistent with the type of interest awarded post-judgment for every other subcontract where interest was awarded. Having concluded that simple pre-judgment interest is appropriate, however, the Court must determine when the interest began to accrue. For other subcontracts, pre-judgment interest began to accrue 180 days after the date of invoice. Here, the record is unclear as to when the pre-judgment interest should accrue or when any relevant invoice was provided. Because Subcontract 417 was terminated by KBR on October 8, 2005, [Doc. No. 41-7] at ¶ 28, the Court will use 180 days from that date, which is April 6, 2006, as the date that pre-judgment interest began to accrue.

3

of 21 August 2012 . . . [p]re-judgment interest is computed as simple interest and does not compound. Post-award interest compounds annually." [Doc. No. 41-2] at ¶ 140.[2]

12. On August 23, 2023, FKTC moved to confirm (a) the 2009 and 2014 stipulations;(b) the partial final awards with respect to Subcontracts 506 (both), 22, and 417;(c) the partial final award as to interest on those claims;(d) the denial of damages as to Subcontract 145; and (e) the July 2022 final award to the extent it incorporated the prior partial awards and stipulations and granted relief to FKTC on its Subcontract 190 claim. [Doc. No. 42].

**B. Interest and Outstanding Balances**

13. <u>Subcontract 190</u>: FKTC calculates it is owed $371,049.47 in interest as of August 23, 2023. [Doc. No. 41-14] at 1, 7. This calculation understates the interest owed to FKTC based on a post-judgment compound annual interest rate of 5 percent, even through August 23, 2023. The Court finds that using the five percent interest rate, and based on the principal award of $6,604,074.38 from July 11, 2022, the outstanding interest as of September 22, 2023 is $398,199.85, with a total due to FKTC for Subcontract 190 in the amount of $7,002,274.23.

14. <u>Subcontract 506</u>: The principal awarded in the first partial award on June 6, 2010 was $5,827,827.25. The accrual dates of this interest vary, but based on [Doc. No. 41-12], the pre-award interest on the initial Subcontract 506 award amounts to $834,049.30. [Doc. No. 41-14] at 4. KBR does not dispute this figure. Therefore, the principal and pre-award interest amounts to $6,661,876.55 for the first partial award on Subcontract 506. The principal awarded in the second partial award on November 16, 2011 was $8,784,902.55. Pre-award interest began to accrue on April 25, 2008, resulting in pre-award interest of $1,564,434.70. *Id.* Therefore, the principal and pre-award interest amounts to $10,349,337.25. In total, the principal and pre-award interest for both Subcontract 506 partial awards is calculated at $17,011,213.80. In 2014, KBR made a total of four payments, one each in July, August, September, and November. [Doc. No. 41-12]. Only the exact date for July (July 3, 2013) is provided. *Id.* The four payments are not in equal installments but equal a total of $17,008,777. *Id.* FKTC uses an approximate payment date of August 31, 2014. [Doc. No. 41-14] at 4. Because KBR does not dispute the use of the approximate payment date, and because the precise payment dates are not in the record, the Court will also use the August 31, 2014 date. Accordingly, the post-award interest that accrued on the first partial award amount of $6,661,876.55 (award + pre-award interest) between June 6, 2010 and August 31, 2014 was $1,530,395.71, for a total balance of $8,192,272.26. *Id.* The post-award interest that accrued on the second partial award amount of $10,349,337.25 (award + pre-award interest) between November 16, 2011 and

---

[2] The parties' proposed daily interest of $904.67 does not appear to reflect post-judgment interest calculated on a compound interest basis, as awarded by the tribunal. It also appears that the proposed interest calculations, [Doc. No. 41-14], have been rounded up or down to the nearest hundredth, which results in an overpayment by FKTC to KBR by about $8,600 as of the August 23, 2023 date that FKTC used. The Court has independently calculated the amount of interest payable based on the Tribunal's award.

August 31, 2014 was $1,510,218.42, for a total balance of $11,859,555.67. *Id.* Therefore, on August 31, 2014, the amount owed by KBR to FKTC under Subcontract 506 was $20,051,827.93. KBR paid $17,008,777, leaving a balance as of August 31, 2014 of $3,043,050.93. Therefore, the Court calculates the interest on this balance from August 31, 2014 to September 22, 2023 to be $1,692,888.96, resulting in a total amount owed of $4,735,939.89.

15. Subcontract 22: The principal amount awarded on August 27, 2010 was $167,937.81, with five percent simple pre-award interest awarded from May 7, 2007. [Doc. No. 41-9] at ¶ 32. Therefore, the pre-award interest that accrued was $27,767.25. [Doc. No. 41-14] at 2. Five percent post-award compound annual interest was also ordered by the tribunal. [Doc. No. 41-9] at ¶ 32. KBR made a payment of $195,866 on Subcontract 22 on August 31, 2014. Between August 26, 2010 and August 31, 2014, $42,366.53 in post-award interest accrued. *Id.* Therefore, the total amount owed as of August 31, 2014, inclusive of principal, pre-award interest, and post-award interest was $238,071.59. Accordingly, the outstanding balance on Subcontract 22 as of the August 31, 2014 payment date was $42,205.59. Therefore, still outstanding is that balance along with five percent compound interest that accrued after August 31, 2014. As of September 22, 2023, the Court calculates the outstanding interest to be $23,479.52 with a total outstanding balance of $65,685.11.

16. Subcontract 417: The principal amount awarded on January 24, 2011 was $999,772 with pre-award simple interest calculated from April 6, 2006. *See*, *supra*, n.1. Therefore, between April 6, 2006 and January 24, 2011, KBR owed $240,219.19 in pre-judgment simple interest. In August 2014, KBR made a payment of $999,772. It is unclear to the Court when in August the payment was made, but because KBR does not dispute the August 31, 2014 date used by FKTC, and because there is no evidence on the record of when the payment was actually made, the Court will also use that date. From January 24, 2011 to August 31, 2014, $238,293.67 in post-award compound interest accrued, resulting in a total balance of $1,478,284.86 owed as of the date of KBR's payment. Subtracting KBR's payment, which equated to the total principal, as of August 31, 2014, the outstanding balance was $478,512.86. The Court calculates that between August 31, 2014 and September 22, 2023, $266,202.95 in interest accrued, for an outstanding balance of $744,715.81.

17. Stipulations: The 2009 and 2014 stipulations total $29,537,827. [Doc. Nos. 41-4, 41-41-10]. In July 2014, KBR made two payments on the 2009 and 2014 stipulations, $1,101,830 and $308,123, respectively. FKTC does not oppose KBR's claimed offsets for these two payments. [Doc. No. 46] at 5. KBR also claims it is entitled to an offset to the 2009 stipulation in the amount of $312,272.50 for a payment it made in 2005 on one of the subcontracts that was included in the 2009 stipulation. [Doc. No. 40] at 7; [Doc. No. 46] at 5. For reasons explained separately, *infra*, the Court will not calculate interest on the stipulations.[3] Accordingly, the balance owed by KBR to FKTC for the 2009 and 2014

---

[3] FKTC claims $28,896,858.15 in unpaid interest on the stipulations. [Doc. No. 41-14] at 5-6.

5

stipulations is either $28,127,874 or $27,815,601.50, depending on whether the Court determines the 2005 payment should be applied against the outstanding balance.

## II. LEGAL STANDARD

**A. Confirmation of Arbitral Awards**

Under Chapter 1 of the Federal Arbitration Act ("FAA"), within one year after an award is made pursuant to an arbitration, a party to the arbitration may apply to a court for confirmation of the award. *See* 9 U.S.C. § 9. Under Chapter 2 of the FAA, a three-year limitations period applies. *See* 9 U.S.C. § 207. The one-year limitations period in Chapter 1 is "a permissive provision which does not bar the confirmation of an award beyond a one-year period." *Sverdrup Corp. v. WHC Constructors, Inc.*, 989 F.2d 148, 151, 156 (4th Cir. 1993) ("An examination of the FAA's language gives rise to the inference that Congress understood the plain meaning of 'may' to be permissive."). While it appears the Fourth Circuit has not decided whether the three-year time limitation in Chapter 2 is permissive or mandatory, the similar use of "may" counsels that, it too, is permissive. *Compare* 9 U.S.C. § 9 ("[A]t any time within one year after the award is made any party to the arbitration **may** apply to the court . . . for an order confirming the award") (emphasis added) *with* 9 U.S.C. § 207 ("Within three years after an arbitral award . . . is made, any party . . . **may** apply to any court . . . for an order confirming the award") (emphasis added). Accordingly, for the reasons outlined in *Sverdrup*, the Court concludes the time limitation in Chapter 2 is also permissive.[4]

---

[4] The Court concludes the time limitation in Chapter 2 is permissive, notwithstanding KBR's citations to out-of-circuit decisions that have come to the contrary conclusion, *see* [Doc. No. 45] at 4-5 (citing cases), at least one of which, *see Photopaint Techs, LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003), specifically disagreed with *Sverdup*, which constitutes binding precedent for this Court. FKTC also claims it is entitled to equitable tolling and that it may invoke the partial awards as defensive offsets regardless of any time limitation on its affirmative claims. [Doc. No. 41] at 9-12. Given the Court's conclusion that FKTC's claims are timely, *see infra*, there is no need to rule on these contentions.

As the Court previously explained in its May Order, where the parties have agreed to arbitrate—as FKTC and KBR have—once the mandatory time period for moving to vacate, modify, or correct an arbitral award has lapsed a court must confirm the award upon a timely motion to do so. *See* [Doc. No. 31] at 11-13.

### B. Discretionary Assessment of Interest on Arbitral Stipulations

The parties agree that courts have the discretion to award post-award, pre-judgment interest where an arbitral award is silent. *See, e.g.*, *Ministry of Def. of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1094 (9th Cir. 2011). However, such discretion is constrained to "be exercised in a manner consistent with the underlying arbitration award," and therefore courts "may not award pre-judgment interest when the arbitration tribunal has determined that such interest is not available." *Id.* at 1103.

### III. ANALYSIS

### A. Confirmation of Arbitral Awards

KBR contends that FKTC has moved a decade too late to confirm the various arbitral awards and stipulations. FKTC contends that under the "complete arbitration rule" it could not have sought confirmation of the partial awards until the final award issued in July 2022.

Section 5.3 of the Arbitration Agreement provides:

> The Parties agree that awards rendered by the arbitrators shall be final and binding, and agree to abide by and to execute promptly any such award. However, **the parties agree that final monetary awards to a party shall only be issued by the Arbitration Panel to the extent that the total of money awards to such party exceeds the total of monetary claims filed by the other party which remain pending before the arbitration panel.**

[Doc. No. 41-3] at § 5.3 (emphasis added. Section 5.3's second sentence clearly contemplates that a monetary award would not issue until all claims by the parties had been adjudicated by the

7

arbitration panel. The "complete arbitration rule" precludes federal courts from reviewing arbitral awards "until the arbitrator has decided all facets of the dispute." *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 815 F.3d 154, 160 (4th Cir. 2016).[5] The rule aims to prevent piecemeal litigation and repeated appeals, all of which run counter to the well-established goal of judicial efficiency. *Id.* at 160. To require FKTC to have repeatedly run to the courthouse after each partial arbitral award and prior to the final award, would have been inconsistent with binding Fourth Circuit precedent, as well as a waste of judicial time and the parties' resources. Moreover, the entire purpose of the confirmation process is to ultimately yield an enforceable money judgment. *Cf. CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 73 (2d Cir. 2017). As previously stated, and as implied by the parties' agreement in § 5.3 of the arbitration agreement, the purpose of reducing a dispute to a money judgment would be frustrated if outstanding aspects of the dispute threatened to upset the net award. While KBR cites to an unpublished Fourth Circuit decision that found the district court was able to confirm a partial arbitral award, the court did so notwithstanding its view that while "piecemeal litigation is generally disfavored" there were "discrete time-sensitive issues" at play in that case. *Arrowhead Global Solutions, Inc. v. Datapath, Inc.*, 166 Fed. App'x 39, 43 (4th Cir. 2006). Here, by contrast, the need to confirm the earlier arbitral awards were not time sensitive given that §5.3 of the arbitration agreement precluded a final monetary award while other claims were pending, which they were until the July 2022 final award.

For the above reasons, the appropriate date from which the limitations period runs as to all partial awards is the date of the final award, July 11, 2022. The Court next considers whether

---

[5] While KBR argues that the various awards were on separate issues, the language of § 5.3 necessarily intertwines all claims made by FKTC and KBR against one another.

FKTC's Motion to Confirm is timely given it was filed one year, one month, and twelve days after the final award. The Court concludes that it is.

Here, both Chapters 1 and 2 of the FAA apply. Chapter 1 applies because 9 U.S.C. § 9 permits confirmation when no court is specified in the agreement and the confirmation application is made in the "district within which such award was made." Here, the arbitration was made in Arlington, Virginia, [Doc. No. 41-2] at 87, which is within this judicial district. Chapter 2 also applies because the arbitration agreement and award arose out of a commercial relationship between at least one foreign corporation. *See* 9 U.S.C. § 202; [Doc. No. 1-1] at 4 (identifying FKTC as a citizen of both Kuwait and Lebanon, and KBR as a citizen of Delaware and Texas). KBR contends that Chapter 2 applies where its terms conflict with Chapter 1, [Doc. No. 45] at 4; but under either Chapter 1 or Chapter 2, FKTC's Motion to Confirm is not time-barred. [6]

Under Chapter 2, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207. Under Article V of the New York convention, refusal or deferral of recognition is only appropriate where a party is incapacitated, the arbitration is invalid by law, there was improper notice of the arbitration, the decision or terms of the arbitration was beyond the scope contemplated by the agreement, the composition of the arbitral authority was contrary to the arbitration agreement or law, the award was not binding or was set aside, the subject matter

---

[6] Should Title 1's one-year limitation apply, as detailed *supra*, under *Sverdrup*, the limitations period is permissive. Moreover, as KBR concedes, in *Sverdrup* the Fourth Circuit found a motion to confirm filed thirty-eight days after the expiration of the one-year period was permitted. *Sverdrup Corp.*, 989 F.3d at 155-56. Here, using the July 11, 2022 final award date as the Court has already established, FKTC's Motion was forty-three days late—only five days later than the movant in *Sverdrup*. Therefore, the Motion is not time-barred under 9 U.S.C. § 9. And should Title 2's three-year limitations period apply, as KBR contends, the result is no different. Regardless of whether it is a permissive or mandatory time limitation (as the Court noted, *supra*, it is likely permissive in this Circuit), because the time did not begin to run until July 11, 2022, the Motion to Confirm is within the three-year period.

was not capable of settlement in the country at issue, or recognition would be contrary to public policy. *See* Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("New York Convention"), 21 U.S.T. 2517, art. V. None of the enumerated bases provide justification for the Court's refusal to confirm the awards, and KBR does not assert any. Accordingly, the Court will grant FKTC's Motion to Confirm. Having concluded that the Motion to Confirm is timely, the Court must confirm it. Under Chapter 1, the Court "must grant [the confirmation] order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. As the Court concluded with respect to the final award, *see* [Doc. No. 31] at 11-13, because the mandatory time period (three months) for vacating, modifying, or correcting the arbitral awards under Chapter 1 has lapsed, the Court must confirm.

### B. Discretionary Assessment of Interest on Arbitral Stipulations

FKTC seeks $28,896,858 in interest on the amounts covered by the 2009 and 2014 stipulations. [Doc. No. 41-14] at 1, 5-6. However, interest was not provided for in either stipulation, and both stipulations were said to be "conclusive in this arbitration." [Doc. Nos. 41-4, 41-10]. Relatedly, the parties dispute whether the arbitration panel reached the issue of interest on the stipulations. On that point, FKTC essentially contends that the tribunal never resolved the issue (despite the tribunal's purported suggestions to the contrary) and that the tribunal's award of post-judgment interest on the disputed partial awards counsels in favor of an award of interest on the stipulated amounts as requested. [Doc. No. 41] at 16-17. KBR contends that in earlier decisions the tribunal, after expressing great skepticism about the propriety of interest on the stipulations, deferred a decision on that issue and then, in its final award, effectively denied interest when it denied all other relief not explicitly referenced in its final award. [Doc. No. 45] at 11-12.

Here, interest, as FKTC requests, is not warranted, regardless of whether the tribunal reserved on that issue. The requested interest amounts to nearly thirty million dollars; and nothing in the stipulations suggests that any further amounts would accrue as to the stipulated amounts or that the issue of interest was reserved for future resolution. Nor is there any evidence that KBR would have agreed to the stipulations with interest or with that issue reserved, particularly where the joint stipulations were at least in part intended to offset future awards and claims. The stipulations do not set a deadline for payment and FKTC should have raised and resolved the issue of interest within the context of the stipulation, particularly in the 2014 stipulation, after entering into the 2009 stipulation. Additionally, the Court is not persuaded, as FKTC in substance contends, that a stipulation, i.e., a contract entered into by the parties, should be treated the same as a court or arbitral panel-issued decision for the purpose of determining whether interest should be awarded. Within the context of a stipulation, the payment *vel non* of interest on the stipulated amount is a material term, and the absence of any obligation to pay interest must be deemed part of the bargain struck. For essentially the same reasons, the notion that the payment of interest is justified on equitable principles pertaining to full and fair compensation, as FKTC also argues, falls short within the context of a bargained for stipulation, particularly where, as here, the unpaid stipulated amounts were not funds used or held by KBR during that time period, but rather amounts that had not been paid by the United States Government as a result of its decision to withhold funds from KBR. *See* [Doc. No. 45] at 10 (citing the final award and declaration). Accordingly, the Court concludes that interest on the stipulations was not contemplated by the parties and is otherwise not warranted.

**C. Offsets**

Having concluded that the FKTC's Motion to Confirm will be granted, that interest on the stipulations is inappropriate, and the amounts of accrued interest on the various awards, described *supra*, the only issue remaining for decision is whether to apply as an offset KBR's 2005 payment of $312,272.50 on one of the subcontracts that was included in the 2009 stipulation. That payment was made years before the 2009 stipulation, its application against the stipulated amount could have been negotiated by the parties at the time, and the stipulation specifically stated that it was "conclusive"; therefore, the Court will not offset the balance owed on the 2009 stipulation by the 2005 payment.

Based on the above rulings, the Court will enter a final judgment based on the following calculations, shown as the amount owed to KBR by FKTC. The interest, where applicable, is calculated through the date of this Order. Further explanations of these amounts can be found in Sec. I, *supra*.

| | | |
|---|---|---|
| (+) | $48,754,547 | Subcontract 11: Awarded to KBR, not inclusive of offset included in the July 2022 final award. |
| (-) | $26,255,713 | 2009 Stipulation: Owed to FKTC per joint stipulation; no interest. |
| (-) | $7,002,274.23 | Subcontract 190: Awarded to FKTC, inclusive of interest. |
| (-) | $4,735,939.89 | Subcontract 506: Awarded to FKTC, inclusive of both partial awards and interest. |
| (-) | $65,685.11 | Subcontract 22: Awarded to FKTC, inclusive of interest. |
| (-) | $744,715.81 | Subcontract 417: Awarded to FKTC, inclusive of interest. |
| (+/-) | $0 | Subcontract 145: All claims and counterclaims denied. |
| (-) | $3,282,114 | 2014 Stipulation: Owed to FKTC per joint stipulation; no interest. |
| (+) | $1,101,830 | First 2014 Stipulation Payment: Paid by KBR toward the stipulations. |

| (+) | $308,123 | Second 2014 Stipulation Payment: Paid by KBR toward the stipulations. |
|---|---|---|
| (+/-) | $0 | Purported 2009 Stipulation Payment: Paid by KBR in 2005; no offset awarded. |
| (=) | **$8,078,057.96** | **Final Judgment after offsets in favor of KBR.** |

## IV. CONCLUSION

For the above reasons, it is hereby

**ORDERED** that FKTC's Motion to Confirm Arbitral Awards, [Doc. No. 42], be, and the same hereby is, GRANTED; and it is further

**ORDERED** that consistent with this Order, the Clerk enter final judgment pursuant to Federal Rule of Civil Procedure 58 in favor of Respondent Kellogg Brown & Root International, Inc. and against Movant First Kuwaiti General Trading & Contracting W.L.L. in the amount of $8,078,057.96, with any additional post-judgment interest at five (5) percent compounded annually.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all counsel of record.

September 22, 2023
Alexandria, Virginia

_____
Anthony J. Trenga
Senior U.S. District Judge